**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ANDREW GARY COKER, Individually and as**
**Personal Representative on Behalf of the Wrongful Death**
**Beneficiaries of ADAM BLAKE COKER, Deceased**                    **PLAINTIFFS**

**vs.**                                      **Cause No.** 3:24-cv-555-DPJ-ASH

**BRYAN BAILEY, in his official capacity**
**as the elected sheriff of RANKIN COUNTY, MISSISSIPPI,**
**VITALCORE HEALTH STRATEGIES, LLC,**
**WES ROBERTSON, BETTY TUCKER, COLBY BOYD,**
**LESLIE RISHER, SUNIE PURVIS, JESSICA PIERCE,**
**BILLIE STIGLER, JANICE PATRICK,**
**TOMMY HILDESHEIM, FNU ROOSEVELT,**
**BRANDON PURVIS, KRISTIE DANIELLE BARBER,**
**BLAINE CARTER WHITE, ZACHARY THOMPSON,**
**RANKIN COUNTY, MISSISSIPPI, and JOHN and JANE**
**DOES 1-24**                               **DEFENDANTS**

<u>**ORIGINAL COMPLAINT**</u>

COME NOW the Plaintiff, Andrew Gary Coker, individually and on behalf of all entitled to recover, and files their Original Complaint through their undersigned counsel. In support thereof, the Plaintiff would show unto this Honorable Court the following, to wit:

**PARTIES**

*The Victim*

1.      Adam Blake Coker was a 32 year-old resident of Hinds County. His friends and loved ones called him Blake, and that is how he will be known in this Complaint.

2.      While he was in the custody of the Rankin County Sheriff, Blake died from sepsis due to a ruptured appendix on September 21, 2021. He received no medical care despite his incessant pleas to the jail staff for help.

3.      Plaintiff, Andrew Gary Coker, is the father of Blake Coker, deceased.  Plaintiff is an adult resident of Raymond, Hinds County, Mississippi, and resides at 3381 Ratliff Road, Raymond, Mississippi, and brings this action individually and as personal representative on behalf of the surviving heirs/wrongful death beneficiaries of decedent.

*Rankin County Sheriff Bryan Bailey*

4.      Defendant Bryan Bailey is the elected Sheriff of Rankin County, Mississippi, which is a county organized under the laws of the State of Mississippi. This Defendant may be served with process at his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his official capacity. By law, Rankin County, Mississippi is responsible for the acts and omissions of Rankin County Sheriff Bryan Bailey and his Department, as well as the official acts of the individual Defendants listed below. When a plaintiff sues a Mississippi sheriff in his official capacity as the Plaintiff here have done, the action is one against the county that elected the sheriff. Therefore, this Defendant will be at times referred to herein alternatively as "Defendant Rankin County," "Defendant Bryan Bailey," or similar.

*VitalCore Health Strategies, LLC*

5.      Defendant, VitalCore Health Strategies, LLC (hereinafter "VitalCore"), a for-profit private medical company incorporated and existing in the state of Kansas, is under contract with Rankin County, Mississippi, to provide the detainees housed in the RCDC with on-site medical care. Under its contract with Rankin County, VitalCore is responsible for providing humane care and treatment consistent with all constitutional and ACA standards. However, VitalCore frequently disregards its responsibilities to detainees. VitalCore has a pattern of ignoring and failing to provide medical treatment to detainees, such as Blake, who needed

immediate medical treatment for sepsis. VitalCore knew that its failure to provide medical treatment to detainees suffering from sepsis would create a dangerous environment for detainees such as Blake. VitalCore's principal business place is 719 SW Van Buren Street, Suite 100, Topeka, Kansas 66603. It is subject to the jurisdiction of this Court by service of process upon its registered agent, Corporation Service Company, 109 Executive Drive, Suite 3, Madison, MS 39110.

6.      Wes Robertson is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center detainees. Defendant Robertson may be served with process at his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

7.      Betty Tucker is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center detainees. Defendant Tucker may be served with process at her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

8.      Colby Boyd is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center detainees. Defendant Boyd may be served with process at his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

9.      Leslie Risher is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center detainees. Defendant Risher may

be served with process at her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

10.    Sunie Purvis is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center detainees. Defendant Risher may be served with process at her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

11.    Jessica Pierce is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center detainees. Defendant Pierce may be served with process at her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

12.    Billie Stigler is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center detainees. Defendant Stigler may be served with process at her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

13.    Janice Patrick is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center detainees. Defendant Patrick may be served with process at her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

14.     Defendant Tommy Hildesheim is an employee of the Rankin County Sheriff's Department. He may be served with process and his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

15.     Defendant FNU Roosevelt is an employee of the Rankin County Sheriff's Department. His first name is currently unknown, but his badge number is "J75." He may be served with process and his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

16.     Defendant Brandon Purvis is an employee of the Rankin County Sheriff's Department. He may be served with process and his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

17.     Defendant Kristie Danielle Barber is an employee of the Rankin County Sheriff's Department. She may be served with process and her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

18.     Defendant Blaine Carter White is an employee of the Rankin County Sheriff's Department. He may be served with process and his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

19.  Defendant Zachary Thompson is an employee of the Rankin County Sheriff's

Department. He may be served with process and his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

20. Rankin County, Mississippi is organized under the laws of the State of Mississippi and may be served with process by service upon its Chancery Clerk, Hon. Mark Scarbrorough, at 211 E. Government St., Brandon, Mississippi, or as may be otherwise proper under Mississippi law.

*The John and Jane Doe Defendants*

21.     Defendant John and Jane Does 1-24 are unknown individuals and/or entities liable to the Plaintiff for the acts and omissions as alleged herein. The names and capacities of Defendants John and Jane Does 1-24 inclusive, whether individual, corporate, or otherwise, are presently unknown to Plaintiff, who therefore sue said Defendants by fictitious names and will further seek leave of this Honorable Court to amend this Complaint to show their true names and capacities when the same are ascertained. Plaintiff alleges upon information and belief each of the Defendants designated herein as a Doe is responsible in some manner and liable herein to Plaintiff by reason of negligence, wanton and reckless misconduct, deprivation of civil rights, and/or in some other manner whether alleged herein in this Complaint or not, and by such wrongful conduct, said Defendants, each of them, proximately caused the injuries, deprivations, and damages occasioned herein.

22.     At all times material to this Complaint, Defendants were acting under the color of law, and/or under the color of the statutes, customs, ordinances, and usage of the State of Mississippi and/or their respective municipalities.

<u>JURISDICTION</u>

23.     The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as the claims are so related to the claims arising under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

VENUE

24.     Venue is proper in this jurisdiction and district pursuant to 28 U.S.C. §§ 1391(b) in that the alleged acts and omissions of the Defendants occurred exclusively within the territorial limits of this judicial district and division. Additionally, Defendant Rankin County is found within the territorial limits of this judicial district and division.

FACTS

**Part A – The Culture of the Rankin County Sheriff's Department**

*Brutality was rampant*

25.     For the entirety of Rankin County Sheriff Bryan Bailey's tenure as sheriff – and during his time as an employee of the Rankin County Sheriff's Department prior to being elected sheriff – Rankin County Sheriff's Department narcotics officers and patrol deputies orchestrated a reign of terror in which people suspected of suffering from drug addiction or being involved in the illegal drug trade were subjected to civil rights abuses.

26.     These civil rights abuses occurred regardless of whether the victims were in custody.

27.     Rankin County Sheriff's Department employees "barged into homes in the middle of the night, accusing people of dealing drugs."[1] They then "handcuffed or held them at gunpoint

---

[1] Brian Howey & Nate Rosenfield, *How a "Goon Squad" of Deputies Got Away with Years of Brutality*, N.Y.

and tortured them into confessing or providing information."[2]

28.    These were not one-off incidents. They were frequent occurrences, leaving "dozens of people who say they endured or witnessed the assaults."[3]

29.    Investigative reporting by the New York Times and Mississippi Today uncovered 17 different instances of brutality by the Rankin County Sheriff's Department involving 22 victims.[4]

30.    In October of 2009, Rankin County deputies confronted a man named Christopher Hillhouse inside of his own home without a warrant. They handcuffed him, punched him in the stomach, and led him outside to a van, inside of which they beat him for approximately 30 minutes. During the beating, Rankin County Investigator Brett McAlpin knocked out one of Hillhouse's teeth with a flashlight. Hillhouse was not prosecuted.[5]

31.    In June of 2010, Rankin County Investigator Brett McAlpin mistakenly entered the home of Brett Gerhart. McAlpin thought he was entering a nearby home where a confidential informant signaled that they were in need of help. As part of the planned "buy-bust" operation involving the confidential informant, McAlpin was to bring breaching tools that could be used to enter the target home, which was covered in burglar bars. The Gerhart home had no burglar bars. Once inside, McAlpin tackled Gerhart, who was a minor child. McAlpin then kicked Gerhart in the side and in the back of the head. McAlpin denied he did that, but Gerhart sustained injuries consistent with that type of attack. McAlpin was deemed "inattentive" in an investigation into

---

TIMES, Nov. 20, 2023 (updated June 12, 2024), https://www.nytimes.com/2023/11/30/us/rankin-county-mississippi-sheriff.html (last visited September 9, 2024).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] Nate Rosenfield and Brian Howey, *Stories of Alleged Brutality by a Mississippi Sheriff's Department*, N.Y. TIMES, Dec. 23, 2023 (updated June 12, 2024), https://www.nytimes.com/2023/12/23/us/alleged-brutality-mississippi-police.html

the incident by the Pearl Police Department, and McAlpin was sued civilly. That lawsuit went to trial in September of 2019, with Rankin County Sheriff's Department in-house counsel Paul M. Holley representing McAlpin. The matter settled after several days of trial and prior to a jury verdict.[6]

32.     In November of 2010, Rankin County Sheriff's Department deputies took a 17 year-old Dustin Hale into custody over a fight in a friend's yard. They believed he had a firearm at one point, but they could not find it on him. They took Hale to the Rankin County Sheriff's Department, placed him in an interview room, and beat and Tasered him until he urinated on himself. He was fined $507 for disorderly conduct, failure to comply, and possession of alcohol.[7]

33.     In September of 2012, 37 year-old Gary Frith alleged that he was beaten and stomped by Rankin County Sheriff's Department deputies during a traffic stop. He said he was then choked and beaten inside of a patrol car, and told to leave Rankin County or be murdered by the Rankin County Sheriff's Department. His booking photo shows a large bandage over one eye, but incident reports do not give any reason for the bandage.[8] Mr. Frith filed a lawsuit against Rankin County in November of that year, and Sheriff Bryan Bailey was listed as a defendant. Rankin County Investigator Brett McAlpin was one of the arresting officers.[9]

34.     In 2013, Rankin County Sheriff Bryan Bailey named Investigator Brett McAlpin "Rankin County Sheriff's Department Investigator of the Year."[10]

35.     In March of 2015, Rankin County Sheriff's Deputies allegedly held Ronald

---

[6] See generally *Joseph Gerhart, et al v. Rankin County, et al*, S.D. Miss. Cause No. 3:11-cv-586-HTW-LRA.
[7] Rosenfield & Howey, *Stories*
[8] *Id.*
[9] See generally *Gary Frith v. Rankin County Sheriff's Department, et al*, S.D. Miss Cause No. 3:12-cv-791-DPJ-FKB
[10] Jacob Sullum, *Mississippi Sheriff Insists He was Oblivious to His Drug Warriors' Long Pattern of Brutality,* REASON, Nov. 30, 2023, https://reason.com/2023/11/30/mississippi-sheriff-insists-he-was-oblivious-to-his-drug-warriors-long-pattern-of-brutality/ (last visisted September 12, 2024)

Shinstock's wife, children, and friends at gunpoint while they conducted a warrantless search of the Shinstock home. During this raid, Shinstock alleged that deputies made him strip naked and threatened to hit him in the groin with a flashlight. Shinstock's friend, John Burrell, alleged that during this raid the deputies hit him in the head repeatedly, causing his ears to bleed.[11]

36.     In June of 2016, Samuel Carter and Christopher Holloway allege that Rankin County deputies barged into Carter's home without a warrant. While there, they allegedly called Holloway racist names, handcuffed him, beat him, and shocked him repeatedly in the groin, causing him to defecate on himself. They also allegedly threatened to throw him into the pool while handcuffed. Taser logs reveal that Deputy James Rayborn – who all agree was present at the Carter home – used his Taser 6 times for 20 seconds, matching Holloway's accusations. Carter alleged he was also shocked and beaten.[12]

37.     Two years later in June of 2018, 4 men allege that Rankin County Sheriff's Deputies James Rayborn, Luke Stickman, and Cody Grogan brutalized them during a raid on a home where narcotics were believed to be located. The men claim they were Tasered in the genitals, tortured with a blowtorch, choked with a belt, pinned beneath a broken bed, kicked in the sides, dragged by the hair, and more. One of the men claimed a deputy drew a swastika on his face, which can be seen in his booking photo. Rankin County Sheriff's Department Taser records show that the deputies used their Tasers 14 times for 27 seconds. Rankin County Sheriff's Department Investigator Brett McAlpin was also present and directed the torture. His report on the raid does not mention any use of force whatsoever.[13]

38.     Also in June of 2018, a man named Robert Jones was booked into the Rankin

---

[11] Rosenfield & Howey, *Stories*
[12] *Id.*
[13] *Id.*

County Detention Center with mud spread across his swollen face. Jones told a fellow jail detainee that Rankin County deputies beat him and Tasered him above his heart while he was partly submerged in a ditch. He also said that the deputies shoved a stick down his throat, causing him to vomit blood. The incident report does not mention any use of force, although Jones's booking photo corroborates his story and makes clear that some level of force was used.[14]

39.    One month later in July of 2018, Rankin County deputies arrested 38 year-old Fredrick Trimble for a drug charge. Trimble alleged that the deputies Tasered him in the groin and placed a gun in his mouth, threatening to kill him. Trimble also alleged that one of the deputies pistol-whipped him.[15]

40.    In August of 2018, Rankin County Sheriff's Department deputies – including Chief Investigator Brett McAlpin – arrested Jeremy Travis Paige for a drug crime. During the arrest, they allegedly beat him unconscious, then dragged him into his home. Once inside the home, the deputies allegedly beat and tortured him for around an hour. Paige claims he was waterboarded, burned with a lit cigarette, and Tasered. Rankin County Sheriff's Department Taser records confirm the use of a Taser during Paige's arrest, and Paige's booking photo shows that Paige was beaten. Paige's roommate took pictures of a bare mattress and blood spatter on the wall, which match Paige's account of Rankin County deputies taking the sheets off of the mattress and beating him.[16] A report from his booking also shows that Paige received medical care for bruising on his face and bleeding from his hand. Paige sued Rankin County, the Rankin County Sheriff's Department, Investigator Brett McAlpin and Sheriff Bryan Bailey.[17] Bailey

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] See generally *Jeremy Travis Paige v. Rankin County, et al*, S.D.Miss. Cause No. 3:20-cv-197-FKB

participated in that litigation, that contained behavioral accusations which would eerily mirror proven Goon Squad tactics a few years later.

41.     In another attack that flashed of Goon Squad tactics, Rankin County deputies entered the home of Rick Loveday, a 47 year-old Hinds County Sheriff's Deputy. Once there, they dragged him half-naked into his kitchen and tortured him with food and stabbed at his buttocks with a large flashlight. They also attacked a guest in Mr. Loveday's home, waterboarding him, Tasering him, choking him with a lamp cable, and sticking the Taser gun in his mouth. A woman was also present at Mr. Loveday's home, and she confirmed seeing the deputies torture and beat Mr. Loveday and hearing the deputies torture and beat the other man. This was all in the name of a drug investigation, which went nowhere as all charges were dropped.[18]

42.     In February of 2019 Rankin County deputies allegedly beat a man named Carvis Johnson with a car jack handle inside a truck bed. During the beating, Rankin County Deputy Jamie Perry allegedly put a gun into Johnson's mouth and threatened to kill him. Once again, Rankin County Investigator Brett McAlpin wrote a report that did not mention any use of force. Mr. Johnson's booking photo shows his face to be bandaged and disfigured, plainly exposing McAlpin's lie by omission to anyone who cared to investigate. Johnson sued the Rankin County Sheriff's Department and obtained a settlement.[19]

43.     In March of 2019, Rankin County deputies allegedly beat 28 year-old Maurice Porter, whom they suspected of dealing narcotics. Mr. Porter claimed the deputies used racial epithets, threatened to Taser him in the groin, beat him, drug him by his hair, kicked him, and pummeled his legs with a nightstick. These deputies then went to Mr. Porter's mother's home

---

[18] Rosenfield & Howey, *Stories*
[19] *Id.*

and searched it without a warrant. While there, they took multiple guns and the security camera system that recorded the illegal raid, according to Ms. Porter.[20]

44.    In January of 2020, Joshua Rushing reported to Sheriff Bryan Bailey that he'd been abused by Rankin County Sheriff's Department Investigator Christopher Dedmon during an arrest. According to Rushing and his girlfriend, Dedmon and other deputies rammed their car to a stop, and Dedmon began using his Taser on Rushing before Rushing left the vehicle. Then while Rushing was in handcuffs, Dedmon placed a gun inside Rushing's mouth and told dispatch that an armed man was fleeing. Dedmon then allegedly pistol-whipped Rushing in the forehead. The deputies allegedly took a detour on the way to the Rankin County Detention Center, stopping in a remote area to Taser Rushing repeatedly and tell him that he'd made a mistake by coming into their county. The Taser logs from that evening show Dedmon used his Taser 6 times for a total of 19 seconds. Also, Mr. Rushing's booking photo shows a large bleeding wound on his forehead, corroborating his account of Dedmon bashing him there with the butt of his service pistol. All charges against Rushing were eventually dropped.[21]

45.    In February of 2020, Rankin County Sheriff's Department deputies conducted a warrantless search of Dwayne Kaiser's home looking for drugs. According to Kaiser, they Tasered him in the leg while beating him and demanding to know where the "buy" money was from a recent confidential informant's drug purchase. While the Taser logs match Kaiser's story, no use of force is mentioned in the deputies' incident reports.[22]

46.    In May of 2021, Christopher Mack was a detainee at the Rankin County Detention Center, having been arrested by the Pearl Police Department. While there, he claims

---

[20] *Id.*
[21] *Id.*
[22] *Id.*

he was beaten by Rankin County Sheriff's Department Investigator Brett McAlpin and other

Rankin County employees for more than 45 minutes. He sustained broken ribs, a broken nose,

and extensive bruising. He threw up blood, and was examined by the jail nurse on duty, who

ordered him to the hospital. Importantly, Mack claims that upon his return from the hospital the

following exchange occurred between him and Rankin County Sheriff Bryan Bailey:[23]

> 23. Once Mack was released from the hospital Sheriff Bryan Bailey asked Mack
> "Who did that to you?" Mack responded, "Chamblee and some of your other deputies and
> trusties." Sheriff Bailey replied, "Fuck!!!" and walked off.

47.     On July 26, 2021, Damien Cameron died after being arrested by Rankin County

Sheriff's Deputies Hunter Elward and Luke Stickman in Braxton, Mississippi. While their

incident reports state that they merely subdued a schizophrenic Cameron by Tasering him,

tackling him, and shoving him into a patrol car, a subsequent autopsy report by Drs. Michael

Baden, Cyril Wecht, and Zhongxue Hua prove those reports false. On the very same day of the

killing, Cameron's grandfather and mother told investigators with the Mississippi Bureau of

Investigations that the two Rankin County deputies had kneeled on Cameron's back and neck for

at least 10 minutes. According to the doctors, that is exactly what happened, and it happened

nearly 14 months to the day after Minneapolis Police Officer Derek Chauvin killed George Floyd

in that exact manner.[24]

48.     In June of 2022, Rankin County Sheriff's Department deputies Tasered Barry

Yawn, then held him upside down and dropped him on his head. They then beat him, breaking

his jaw. When a medic arrived, he demanded that the deputies take Mr. Yawn to the hospital. At

---

[23] See *Christopher Mack v. Rankin County, et al*, S.D. Miss. Cause No. 3:24-cv-306-CWR-ASH, Dkt. No. 1
[24] Nate Rosenfield and Brian Howey, *New Evidence Raises Questions in Controversial Mississippi Law Enforcement Killing*, MISS. TODAY, Aug. 22, 2023, https://mississippitoday.org/2023/08/22/new-evidence-controversial-law-enforcement-killing/ (last visited September 12, 2024)

the hospital, doctors treated him for head injuries and a broken jaw, and also removed Taser prongs from him. Deputies told the doctors that Mr. Yawn sustained the injuries during a fight with his son. The deputies did not arrest Yawn. They subsequently wrote reports that made no mention of Taser use or the use of force. Rankin County Sheriff's Department Taser logs, however, prove that Tasers were used 7 times at the Yawn residence.[25]

49.     In January of 2023, Rankin County Sheriff's Department Investigator Christian Dedmon staged a drug deal between a confidential informant and a man named Robert Grozier and Andrea Dettore's Florence, Mississippi home. Deputies entered Ms. Dettore's home and attacked Mr. Grozier, forcing him into a bedroom in the home and closing the door. They then put a gun in his mouth and Tasered him once he began vomiting from being gagged by the gun. A deputy then found a sex toy in the home and shoved it into Grozier's mouth. Grozier and Dettore were charged with minor misdemeanors and paid fines totaling $750.00.[26]

*The Taser logs reveal the rampant brutality*

50.     As is a constant theme above, the Rankin County Sheriff's Department's Taser logs show dramatically excessive Taser use for which there could be "no justification" according to the director of the University of South Carolina's Excellence in Policing & Public Safety program.[27] To make matters worse, the logs do not match the reports of the deputies to whom the Tasers belong. Often, the deputies did not mention using the Taser *at all*.[28]

51.     The only logical conclusion to be drawn is that Rankin County Sheriff Bryan Bailey either did not check Taser logs, or did and ignored evidence of rampant, deliberate abuses

---

[25] Rosenfield & Howey, *Stories*
[26] *Id.*
[27] Howey & Rosenfield, *"Goon Squad"*
[28] Id.

of citizens by his deputies.

*The Rankin County Sheriff's Department's Goon Squad*

52.    On January 24, 2023, Rankin County Sheriff's Department Chief Investigator

Brett McAlpin received a complaint from a neighbor of his in Braxton, Mississippi. That

neighbor complained of "suspicious behavior" by a couple of Black men who had been staying

at a nearby home.[29]

53.    That nearby home was owned by a white woman, who unbeknownst to McAlpin

or the neighbor was in need of care. The white woman – who had been paralyzed since the age of

15 – was a childhood friend of one of the two "suspicious" Black men. The two "suspicious"

Black men were there caring for her.[30]

54.    That night, McAlpin told Deputy Dedmon to handle the matter.[31]

55.    Dedmon reached out to fellow Rankin County Sheriff's Department employees

who were part of a group of Rankin County Sheriff's Department employees known at the

Rankin County Sheriff's Department as "The Goon Squad" to assist him.[32]

56.    The Goon Squad was led by Rankin County Sheriff's Department Lieutenant

Jeffrey Middleton. Middleton himself had been hired by the Rankin County Sheriff's Office in

2010 after completing 2 years of probation for a vehicular manslaughter he committed while

employed as a Jackson Police Department officer in 2005.[33]

---

[29] Michael Goldberg, *Six Former Mississippi Officers Plead Guilty to State Charges for Torturing Two Black Men*, ASSOCIATED PRESS, Aug. 14, 2023, https://apnews.com/article/mississippi-deputies-goon-squad-guilty-pleas-a04261f338812a0aaf43b4b7efa8c944# (last visited September 16, 2024).
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] Jerry Mitchell, *Rankin Sheriff Says he Learned at the Knee of a Former Simpson County Sheriff, Lloyd 'Goon' Jones*, MISS. TODAY, Jan. 3, 2024, https://mississippitoday.org/2024/01/03/rankin-sheriff-mentored-by-late-simpson-sheriff-lloyd-goon-jones/ (last visited September 9, 2024)

57.     Rankin County Sheriff's Department Investigator Dedmon, Chief Investigator McAlpin, Lieutenant Middleton, Patrol Deputy Daniel Opdyke, and Patrol Deputy Hunter Elward, along with Richland Police Department Narcotics Investigator Joshua Hartfield, all convened at the home that evening. They communicated in established code such as "no bad mugshots" and "work easy" that reflected the longstanding nature of this lawless Rankin County Sheriff's Department outfit as they beat, tased, raped, tortured, and otherwise violated the civil rights of the two innocent Black men.[34]

58.     The Rankin County Sheriff's Department employees repeatedly told the Black men to go back to "their side" of the Pearl River, a warning that Hinds County residents are not welcome in Rankin County.[35] This talk of Pearl River as a dividing line is more than illustrative that Hinds County residents should stay out of Rankin County.  As mentioned above, Mr. Coker was a Hinds County resident at the time of his arrest and death.

59.     The full recitation of the facts constituting The Goon Squad's acts on January 24, 2023 are found in the Information to which McAlpin, Middleton, Dedmon, Elward, and Opdyke pled guilty.[36] The following facts are judicially established as true via the guilty pleas of McAlpin, Middleton, Dedmon, Elward, Opdyke, and Hartfield:

     a.  Rankin County Sheriff's Department employees entered a private home without a warrant;

     b.  Rankin County Sheriff's Department employees beat, tortured, and humiliated innocent citizens;

     c.  Rankin County Sheriff's Department employees discharged their tasers

---

[34] *Id.*
[35] Goldberg, *Six Former Mississippi Officers*
[36] https://www.justice.gov/opa/file/1308901/dl?inline

multiple times on innocent citizens;

d. Rankin County Sheriff's Department employees, including the Rankin County

Sheriff's Department Chief Investigator, stole personal items from private

citizens;

e. A Rankin County Sheriff's Department lieutenant maintained an unregistered

gun in his patrol car in case he needed to plant a gun on an innocent citizen to

mislead others; and

f. Rankin County Sheriff's Department Investigator Dedmon possessed

methamphetamine that he used to "frame" citizens and submitted false reports

about the same.

60.    The Rankin County Sheriff's Department employees did each and every one of

the above without serious concern that such behavior would be reported by other Rankin County

Sheriff's Department employees at the scene or otherwise discovered by supervisors.

61.    With respect to the taser usage, they did so without any care that supervisors at

the Rankin County Sheriff's Department would audit the taser usage logs and ask any questions.

62.    Once Rankin County Sheriff's Department Deputy Elward shot an innocent man

in the face, the Rankin County Sheriff's Department employees hired, trained, and supposedly

supervised by Rankin County Sheriff Bryan Bailey scrambled into coverup mode. They then:

a. used the threat of continued, baseless pretrial detention to coerce a citizen to

lie;

b. wrote false reports;

c. knowingly committed perjury by submitting false affidavits supporting the

arrest of innocent civilians; and

    d.  lied to Mississippi Bureau of Investigation.

63.    As word of the Rankin County Sheriff's Department Goon Squad's actions began to spread publicly, the United States Department of Justice launched an investigation into the operations of the Rankin County Sheriff's Office. Despite this, Rankin County Sheriff Bryan Bailey did not terminate the Rankin County Sheriff's Department officers involved until the eve of their guilty pleas in federal and state court.

64.    As set forth at length hereinabove, the January 24, 2023 mayhem was not the first time Rankin County Sheriff's Department employees had been engaged in unlawful behavior. Nor was it the first time Sheriff Bailey knew of the allegations of improper behavior by his employees at the Rankin County Sheriff's Department.

65.    Once publicly confronted by the horror of the actions of his lieutenant, his chief investigator, and the other Rankin County Sheriff's Department employees, Sheriff Bailey took to CNN to defend himself. While on air, Bailey explained that he was not personally to blame for the depths to which the Rankin County Sheriff's Department had fallen because "The only thing I am guilty of on this incident right here is trusting grown men that swore an oath to do their job correctly." Bailey – whose job as chief policymaker is to hold Rankin County Sheriff's Department employees accountable – also said "Obviously one thing I need to do is make people more accountable."[37]

66.    Despite the protestations of Sheriff Bailey, these were not isolated incidents but were instead part of a "warrior cop" culture in which citizens are viewed as the enemy and less than human by law enforcement. This culture pervaded the Rankin County Sheriff's Department.

---

[37] Devon M. Sayers, *Sheriff Says he is "Ashamed" After Five of His Former Deputies Plead Guilty to Torture of Two Black Men*, CNN, Aug. 4, 2023, https://www.cnn.com/2023/08/04/us/rankin-county-sheriff-torture-black-men-mississippi/index.html (last visited on September 16, 2024)

Not only did Rankin County Sheriff's Department employees ritually engage in excessive use of force, they bragged about it to each other and to members of the public. In fact, the Rankin County Sheriff's Department Goon Squad went so far as to have "challenge coins" printed for their members that bore the Goon Squad's logo on one side and the official seal of the Rankin County Sheriff's Office on the other:



*Sheriff Bailey himself flaunted the law for personal gain and to hide his failures*

67.     Sheriff Bailey also engaged in an affair with a married employee of the Rankin County Sheriff's Department whom was his administrative assistant.[38]

68.     And when Bailey suspected that his employee girlfriend was seeing another man, he utilized his law enforcement powers to investigate. He prepared multiple subpoenas duces tecum targeting his married girlfriend's cell phone records and the cell phone records of at least one other citizen.[39]

69.     Additionally, Sheriff Bailey used county-owned vehicles – usually those seized from suspected drug offenders – as personal vehicles.

---

[38] Ilyssa Daly and Jerry Mitchell, *The Sheriff, His Girlfriend, and the Illegal Subpoenas* MISS. TODAY, Sept. 27, 2023, https://mississippitoday.org/2023/09/27/rankin-sheriff-obtained-subpoenas-to-spy-on-girlfriend/ (last visited September 12, 2024)
[39] *Id.*

70.    Bailey even allowed his employee girlfriend to have one for personal use.

71.    While this employee was seeking medical treatment in Alabama, Bailey used a county vehicle and "Fuelman" card to travel from Rankin County to Birmingham and visit her and further the affair.

72.    Later, when news media began asking questions about the numerous deaths (including Mr. Coker's) at the hands of his sheriff's department, Rankin County Sheriff Bryan Bailey responded by blocking their requests for information.

73.    Sheriff Bailey's refusal to produce the records was subsequently determined by a court to be a violation of the Mississippi Public Records Act.[40]

### The original Goon

74.    Former Simpson County, Mississippi Sheriff Lloyd "Goon" Jones received his nickname from 1960s Mississippi civil rights leaders, who gave him the name for his violent tactics while he worked for the Mississippi Highway Patrol as a trooper and inspector from 1956-1975.[41]

75.    According to the United States Department of Justice, Goon Jones likely shot and killed 22 year-old Benjamin Brown on Lynch Street in Jackson, Mississippi on May 11, 1967.[42] On that day, Brown was present at a civil rights protest at Jackson State University. He was shot in the head and back with a shotgun belonging to a then-unidentified Mississippi Highway Patrol officer. As part of a "cold case" investigation into Brown's death, the Jackson (Miss.) Police

---

[40] Mina Corpuz, *Rankin County Sheriff Violated Public Records Law by Withholding Incident Reports, Judge Says*, MISS. TODAY, March 15, 2023, https://mississippitoday.org/2023/03/15/rankin-county-sheriff-public-records-law/ (last visited September 16, 2024)
[41] Jerry Mitchell, *Rankin sheriff*
[42] *Notice to Close File*, United States Department of Justice Civil Rights Division, File No. 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, https://www.justice.gov/crt/case-document/file/951851/dl (last visited September 16, 2024)

Department conducted an interview in December of 2000 and uncovered a potential confession

by Jones[43]:

V.  Alleged Confession by Lloyd Silas Jones (now deceased), Subject

During the course of JPD's reinvestigation of Mr. Brown's death, investigators
interviewed XXXX on December 1, 2000.  XXXX, stated that XXXXX, Ruth Roberts (now
deceased), was employed with the MHSP in Brookhaven, Mississippi, around the time that Mr.
Brown was shot.  XXX recalled visiting her XXXX at work sometime after the shooting and
having a conversation with her XXXX and the subject, Jones.  During the conversation, Jones
stated that "those niggers don't mess with me in Simpson County because they know I will put
them in their place."  According to XXXX, Jones then began to talk about "a nigger" he killed in
Jackson, Mississippi during a riot.  When Roberts asked Jones whether he was talking about the
shooting that some people had said JPD Detective XXXX had been involved in, Jones replied,
"XXX didn't shoot that nigger, I did."  According to XXX, Jones said "the nigger" raised his
hand and threw something so he shot "the nigger."  XXX told investigators that Jones told XXX
that he took the shotgun used to kill Mr. Brown back to headquarters where he was told to get rid
of it.  Jones told XXX that he took the shotgun home, cleaned it, wrapped it in a blanket, and

4

placed it in his attic for a few months before returning it back into service.  Finally, according to
XXX, Jones told XXX that there were only about five shotguns like the one he used on the scene
the evening Mr. Brown was shot.

Based upon this information, JPD investigators visited the McCain Library and Archives
at the University of Southern Mississippi where they uncovered a signed deposition given by
Jones on February 12, 1969.  In that civil deposition, Jones stated that he was on the police line
on Lynch Street the evening of May 11, 1967, and that he fired his 12-gauge shotgun.  He
estimated that he heard about ten or fifteen shots fired around the time that he fired.

76.    By 1970, three years after the killing of Benjamin Brown, Goon Jones had been

promoted to the rank of Inspector and to lead a unit of Mississippi Highway Patrol troopers.[44]

77.    In February of 1970, Goon Jones stationed his troopers in Simpson County to

harass participants in a civil rights march led by Rev. John Perkins. One of the troopers

threatened one of the activists named Doug Huemmer with death if he did not leave the county.[45]

---

[43] *Id.*
[44] Jerry Mitchell, *Rankin sheriff*
[45] *Id.*

78.     Huemmer and other participants in the civil rights march were subsequently arrested by Goon Jones's troopers and taken from Simpson County to the Rankin County Detention Center.[46]

79.     Rev. Perkins then went to the Rankin County Detention Center, where he and the other civil rights activists were attacked by then-Rankin Sheriff Jonathan Edwards and other law enforcement officers, including Goon Jones.[47]

80.     Rev. Perkins alleged that while at the Rankin County Detention Center, Goon Jones kicked him and told him "we could have killed you a long time ago." Rev. Perkins also stated that one of the officers with Goon Jones held an unloaded pistol to Rev. Perkins's head and pulled the trigger. Another shoved a fork up Rev. Perkins's nose.[48]

81.     Foreshadowing the behavior of Rankin County Sheriff's Department employees decades later as set forth herein above, then-Rankin Sheriff Edwards admitted that he poured moonshine whiskey over the head of one of the arrestees during this violent episode that Goon Jones helped to coordinate.[49]

82.     On May 14, 1970, Goon's state troopers joined Jackson Police Department officers in firing over 400 rounds of ammunition in 28 seconds into Alexander Hall, a dormitory at Jackson State University.[50] Two young men were killed that day, one who was a married father of two young children.[51]

83.     Six years later, Goon Jones was elected Sheriff of Simpson County, Mississippi,

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Perkins, et al v. State of Mississippi,* 455 F.2d 7, 19 (5th Cir., 1972)
[50] Jerry Mitchell, *Rankin sheriff*
[51] Jackson State University Margaret Walker Center, *The Gibbs-Green Tragedy*, https://www.jsums.edu/margaretwalkercenter/gibbs-green-50th-commemoration-exhibit/the-gibbs-green-tragedy/ (last visited September 9, 2024)

where Rev. Perkins's family lived.[52]

84.    Goon Jones was known for raiding the homes of Black civil rights leaders in Simpson County.[53]

85.    Pioneering civil rights attorney Constance Slaughter-Harvey represented Rev. Perkins in a lawsuit filed after the arrest. She had an opportunity to depose Goon Jones. She described him as follows: "Of all the law enforcement officers I have ever questioned, he was the most detestable."[54]

86.    While Slaughter-Harvey deposed Goon Jones, Jones repeatedly called Blacks "n*****s."[55] Slaughter-Harvey is Black.

87.    During that deposition, Goon Jones glared at Slaughter-Harvey. She said, "He looked like he could kill me."[56]

88.    Rankin County Sheriff Bryan Bailey had his first job in law enforcement working as a deputy under Goon Jones in the mid-90s.[57]

89.    As reported by Mississippi Today[58], Rankin County Sheriff Bryan Bailey views Goon Jones as a father figure whom he hopes he makes proud, and wrote the following on the website for the "Officer Down Memorial Page" in tribute to Sheriff Jones[59]:

---

[52] Jerry Mitchell, *Rankin sheriff*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] https://www.odmp.org/officer/reflections/897-sheriff-lloyd-silas-jones (Notably, Bailey wrote this the same year he awarded Goon Squad member Brett McAlpin "Rankin County Investigator of the Year.")

*Sheriff Jones there is not a single day that goes by that I do not think about you. You had such an influence on my life and my career in law enforcement. You gave me a chance, you opened the door for me. You are on my wall of gratitude and you are no doubt a part of who I am and what I am today. I loved you like a father and I still miss you so much. I remember and use everything you taught me to this day. I hope I have made you proud.*

*Sheriff Bryan Bailey*
*Rankin County Sheriff's Department*
*April 17, 2013*

90.     Once the public learned of his Department's true nature in the summer of 2023, Rankin County Sheriff Bryan Bailey protested, "Never in my life did I think (civil rights violations) would happen in this department."[60]

91.     On one hand, Rankin County Sheriff Bryan Bailey claims shock and disgust at the behavior of the law enforcement officers he employed. On the other, Bailey awards the chief wrongdoers and idolizes the notorious Goon Jones, listing him as one of his personal heroes and role models.

### Part B – Sheriff Bailey's Goon Squad culture killed Blake Coker

92.     Blake was arrested by Rankin County Sheriff Deputy and "Goon Squad" member Christopher Dedmon on September 14, 2021. Alongside at least 4 other men employed by Rankin County Sheriff Bryan Bailey, Deputy Dedmon was an active and proud member of the Rankin County Sheriff Department's "Goon Squad."

93.     Blake, a Hinds County resident who found himself as a detainee of Rankin County after his arrest by former Rankin County Deputy Sheriff Christopher Dedmon, died of untreated sepsis while in the custody of Rankin County.

94.     When Blake Coker was arrested by Rankin County Sheriff's Department Investigator Dedmon, he was brought to the Rankin County Detention Center and booked in.

95.     It is standard to ask questions concerning the health of individuals booked into the

---

[60] Sayers, *Sheriff Says*

jail, and that happened here. Blake reported to Rankin County Sheriff's Department employees
that he had medical problems, and that he was on methadone. He also informed them that he
would go through withdrawal if he was not provided methadone.

96.    At that point on September 15, 2021, Blake was placed in the Rankin County
Sheriff's Department's withdrawal monitoring program, and was housed in Pod 214, Cell 138.

97.    The Rankin County Sheriff's Department's medical staff employs the "COWS
scale" in its withdrawal monitoring program.

98.    According to the National Institute on Drug Abuse, the "Clinical Opiate
Withdrawal Scale (COWS) is an 11-item scale designed to be administered by a clinician." The
clinician is to total the scores for each of the 11 items, and then utilize that total score to
determine the stage of opiate withdrawal. A score from 5-12 is classified as mild withdrawal; 13-
24 moderate; 25-36 moderately severe; over 36 severe.

99.    From September 15 through the evening of September 20, 2021, Blake's reported
COWS scores were as follows:

| Time and Date | COWS Score |
|---|---|
| 9/15/21 14:09 | 17 |
| 9/16/21 4:26 | 26 |
| 9/16/21 8:58 | 15 |
| 9/16/21 20:58 | 12 |
| 9/17/21 3:11 | 13 |
| 9/17/21 16:43 | 14 |
| 9/18/21 9:18 | 13 |
| 9/18/21 16:19 | 16 |
| 9/19/21 7:47 | 11 |
| 9/19/21 17:52 | 18 |
| 9/20/21 8:05 | 9 |
| 9/20/21 16:30 | 3 |

100.    At 3:07 pm on September 18, 2021, Blake used the intercom to call Rankin

County Sheriff's Department employee Brandon Purvis, who was stationed in the Jail's tower. He told Purvis that he needed to see the nurse because he was "detoxing" and **would rather kill himself than deal with the pain**.

101.    Purvis then contacted Rankin County Sheriff's Department Sergeant Kristie Danielle Barber via radio. Rankin County Sheriff's Department officers Blaine Carter White and Zachary Thompson took Blake to medical in response to this call.

102.    The nurse Blake saw was Jessica Pierce, who noted – despite his report to Purvis that he was in such pain he would rather die – that Blake was in "NO ACUTE MEDICAL DISTRESS."

103.    In response to this complaint of pain worse than death, Blake was placed in a "suicide prevention suit" by unknown Rankin County employees.

104.    At 8:57 pm on September 18, 2021, Blake was seen by jail nurse Janice Patrick, who noted that Blake was having panic attacks and body pain. Nurse Patrick did nothing.

105.    The following morning at 7:40 am, jail nurse Billie Stigler noted that Blake was not sleeping, was having difficulty walking, was having chills, nausea and loose stool, was suffering from diffuse pain, and was restless. Nurse Stigler did nothing.

106.    At 5:52 pm on September 19, 2021, nurse Pierce noted the same symptoms as nurse Stigler: chills, nausea, loose stool, diffuse pain, restlessness. She also noted that Blake was irritable. Nurse Pierce did nothing.

107.    At 10:33 pm on September 19, 2021, Blake showed nurse Betty Tucker that he had red marks on his skin. This was a hallmark of sepsis. Blake, not being a healthcare professional, believed that the red marks came from not having a mattress in his cell. Nurse Tucker did nothing.

108.    The following morning at 8:03 am, nurse Sunie Purvis noted that Blake's pain level had increased, and that he had chills, an elevated pulse, was irritable, and had difficulty sitting still. Nurse Purvis did nothing.

109.    That afternoon, at 4:30 pm on September 20, 2021, nearly all of Blake's sepsis symptoms had miraculously disappeared according to nurse Colby Boyd. He no longer had an elevated pulse, chills, nausea, loose stool, or restlessness. Blake's body-wide pain was only a 1 on a scale of 0-5.

110.    Three and a half hours later at 7:55 pm on September 20, 2021, nurse Boyd noted that Blake was pacing naked in his cell. A large red spot on his haunch was plainly visible at this time, consistent with the report Blake made to nurse Tucker less than 24 hours prior. Nurse Boyd did nothing.

111.    Hours later, at approximately 12:00 am on September 21, 2021, Blake was calling for help and complaining of right lower quadrant pain.

112.    Rankin County Sheriff's Department officer Tommy Hildesheim was serving as "line office floor walker" when he was called by Rankin County Sheriff's Department officer Roosevelt, who was in the central tower. Roosevelt asked Hildesheim to go check on Blake.

113.    Hildesheim went to see Blake in Cell 138. Blake told him he couldn't lay down because his stomach was hurting "really bad." Hildesheim went and told Wes Robertson, the on-duty nurse at the Rankin County Detention Center that night, about what Blake said about his stomach.

114.    Robertson asked Hildesheim to bring Blake to the clinic "due to him detoxing." Hildesheim did.

115.    In the clinic, Robertson tried to touch Blake's stomach. Blake grabbed

Robertson's hand in an effort to guard his stomach. Hildesheim told Blake to let go. Blake did.

116.   Robertson again tried to touch Blake's stomach, and Blake again tried to protect himself.

117.   At that time, Hildesheim grabbed Blake's arm and shoved him against the wall. Robertson told Blake not to touch him again. Robertson again tried to touch Blake's stomach, and Blake reflexively attempted to stop Robertson.

118.   Hildesheim responded by grabbing Blake by the arm, jerking him up, and taking him back to his cell. Hildesheim says Blake tried to resist by trying to turn around and asking, "what did I do?" Hildesheim responded by grabbing Blake by the arm and shoulder and escorting him to his cell. Once they reached Cell 138, Hildesheim opened the cell door and shoved Blake inside.

119.   The Rankin County Detention Center's suicide prevention cells are equipped with cameras for constant observation.

120.   Through this camera system, Blake's entire stay at the Rankin County Detention Center was observable to employees of the Rankin County Sheriff's Department.

121.   On the night of September 20th into 21st, 2021, Blake can be seen writhing in pain, begging for help, and frequently using the toilet due to both nausea and diarrhea.

122.   At approximately 2:47 am, Blake can be seen pleading for help through his cell door:



123.    Twenty minutes later, Blake again pleads for help at the cell door. Not receiving any, he begins walking back towards his bunk. Unable to make it, Blake doubles over on the floor in pain, covered by his blanket:



124.    By 3:41 am, after several more trips to the toilet, Blake is seen crouched on his bunk, his hands clasped in prayer:



125.    Fourteen minutes later, the Rankin County Sheriff's Department culture of inhumanity towards people with drug problems was on full display. An incredulous Blake can be seen looking at an unknown Rankin County Sheriff's deputy, who is holding out a urine specimen cup and demanding that Blake take a drug test:



126.    Blake pleads with the deputy for medical attention, but is ignored:





127.    For the next hour, Blake can be seen curled in the fetal position on the bunk. At

approximately 4:37 am, Blake attempts to walk to the toilet, but winds up on the floor of his cell

with his fists clenched in pain:



128.    At approximately 5:00 am, Blake was back in medical with nurse Robertson. Blake told him he was in severe pain in his right lower abdomen and in the right rib area, rating it a 10 out of 10 in terms of pain severity. Importantly, Blake also reported that he was vomiting dark red blood and that his stools were black. All of these are signs of severe sepsis. Nurse Robertson did nothing. Instead of being admitted to the emergency room at the nearest hospital, Blake was returned to his cell.

129.    Over the next several hours, Blake can be seen writhing in pain in his cell and frequently using the bathroom.

130.    Nurse Boyd came back on duty during this time. Despite Blake writhing in pain and begging for help, nurse Boyd notes that Blake was simply "at his bedside table" and not in acute distress at 9:06 am.

131.    However, from approximately 8:34 am until 9:26 am, Blake was *not* at his bedside table. Blake wasn't even in his cell:



132.    Instead, Blake had been taken next door to the County Court of Rankin County

for court appearance.

133.    After returning from court, Blake can frequently be seen doubled over in pain

while sitting on the toilet:



134.    And grasping onto it while vomiting:



135.    Around 1:30 pm, Blake can be seen moving on the video for the last time.

136.    He was found dead on his bunk at approximately 2:08 pm by Rankin County

Sheriff's Department officer Fortenberry.

## CAUSES OF ACTION

### 42 U.S.C. § 1983 Denial of Medical Care – Violation of Blake Coker's Fourteenth Amendment Right to Timely Medical Care

137.    The Plaintiff incorporates by reference, as if fully reproduced herein, the allegations contained in the preceding paragraphs of this Complaint.

138.    Every American has a Fourteenth Amendment right to receive timely medical care while in pretrial confinement. See *Estate of Henson v. Krajca,* 440 F. App'x 341, 343 (5th Cir. 2011). Under 42 U.S.C. § 1983, Americans may pursue claims against governmental entities for violations of that right.

139.    As set forth above, the Defendants were made aware that the Plaintiff was in need of serious medical attention.

140.    It was plainly evident that the situation was emergent. Every indicator showed that Blake was suffering from potentially life-threatening sepsis: he reported extreme pain in the lower right quadrant of his abdomen, he was vomiting dark red blood, his stools were frequent and black in color, he was restless and agitated from the pain, and his pulse was elevated.

141.    In a show of just how biased the Rankin County Sheriff's Department was against people with drug problems, instead of taking Blake to an emergency room they gave him a drug test.

142.    Robertson, Tucker, Boyd, Risher, Purvis, Pierce, Stigler, and Patrick – all medical personnel working at the behest and command of Rankin County and Vitalcore Health Strategies, LLC – as well as Rankin County Sheriff's Department employees Tommy Hildesheim, Roosevelt, Brandon Purvis, Kristie Danielle Barber, Blaine Carter White, Zachary

Thompson, were aware of the dangerous situation at hand. To a person they were deliberately indifferent to Blake's serious medical needs, and Blake died as a result.

143.     To a person, each of them had been trained by Defendant Bryan Bailey's Rankin County Sheriff's Department that drug addicts such as Blake were subhuman and untrustworthy; that their every word and every action was nothing but an attempt to gain more drugs. That culture and that training led these Rankin County employees and contractors to ignore the obvious evidence that Blake needed immediate, life-saving medical attention. The culture and training of the Rankin County Sheriff's Department under Sheriff Bryan Bailey killed Blake Coker. It was a direct and proximate cause of Blake's death.

144.     Further, the nurse defendants were trained in a similar fashion by Defendant VitalCore. VitalCore and its employees, including but not limited to the named VitalCore employee Defendants herein, acted with deliberate indifference and callous and reckless disregard for the rights, welfare, and medical needs of and other constitutional rights of Blake Coker.

145.     The named Rankin County Sheriff's Department employees Tommy Hildesheim, Roosevelt, Brandon Purvis, Kristie Danielle Barber, Blaine Carter White, Zachary Thompson, and the Doe Defendants, acted or failed to act, pursuant to the official policies, customs and practices of Sheriff Bryan Bailey and Rankin County, or at the direction of and with the approval of these officials, in depriving Blake Coker of his rights described herein. The policies, practices, and customs were moving forces in the action and inaction of jailers and jail staff, and these jailers and jail staff acted with deliberate indifference to the rights, welfare, medical needs, and other constitutional rights of Blake Coker.

146.     Each and every one of the facts outlined above in this Complaint are proof that

Rankin County Sheriff Bryan Bailey's and VitalCore's agents and employees violated Blake's clearly established right under the Fourteenth Amendment to timely medical care during pretrial confinement.

147.    Further, each and every one of those facts are proof that the policies and customs were adopted and maintained by Rankin County Sheriff Bryan Bailey and VitalCore with objective deliberate indifference to the Blake's constitutional right under the Fourteenth Amendment to timely medical care during pretrial confinement.

148.    It was the policy, custom, and practice of Rankin County Sheriff Bryan Bailey and subordinates under his command to ignore complaints and/or symptoms of serious health problems from detainees who were charged with drug crimes.

149.    It was the policy, custom, and practice of Rankin County Sheriff Bryan Bailey and subordinates under his command to deny, delay, or interfere with detainee requests for medical care.

150.    It was the policy, custom, and practice of Rankin County Sheriff Bryan Bailey and subordinates under his command to fail to follow recognized standards for the provision of medical care to pretrial detainees.

151.    It was the policy, custom, and practice of Rankin County Sheriff Bryan Bailey and subordinates under his command to fail to follow the written policies of the Rankin County Sheriff's Department for the provision of medical care to pretrial detainees.

152.    It was the policy, custom, and practice of Rankin County Sheriff Bryan Bailey and subordinates under his command to fail to adopt written policies for the provision of adequate medical care to pretrial detainees of the Rankin County Sheriff's Department.

153.    It was the policy, custom, and practice of Rankin County Sheriff Bryan Bailey

and subordinates under his command to fail to engage the services of a competent medical provider to ensure that the pretrial detainees of the Rankin County Sheriff's Department received adequate medical care, or to employ such medical providers directly.

154.    It was the policy, custom, and practice of Rankin County Sheriff Bryan Bailey and subordinates under his command to delay taking and/or wholly refuse to take detainees to a hospital so that they may receive emergency medical care.

155.    The policies, practices, and customs outlined in the preceding paragraphs, as well as others that may come to light in the course of this litigation, resulted in numerous, repeated, pervasive, and persistent deprivations of detainees' rights to reasonable, adequate and timely medical care under the Fourteenth Amendments. Blake Coker suffered numerous deprivations of his right to reasonable, adequate, and timely medical care due to the actions of these policymakers, their policies, the jailers, and the jail staff.

156.    The deprivation of the Blake's constitutional right under the Fourteenth Amendment to timely medical care during pretrial confinement as described herein caused him to suffer damages and harm.

157.    As a direct and proximate result of the aforementioned conduct of the Defendants, wherein they deprived the Plaintiff of the right to timely medical care during pretrial confinement as guaranteed by the Fourteenth Amendment, the Blake Coker suffered damages, entitling him and his wrongful death beneficiaries to compensation.

158.    All Defendants are jointly and severally liable for the damages described herein.

<u>RESPONDEAT SUPERIOR</u>

159.    Plaintiff incorporates all allegations set forth in the preceding paragraphs of this Complaint.

160.    VitalCore's employees acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent the Decedent's death. At all times relevant, each Defendant owed a duty to Blake Coker to ensure his health, safety, and well-being, and the Defendants breached this duty. The actions and inactions of VitalCore, Robertson, Tucker, Boyd, Risher, Purvis, Pierce, Stigler, and Patrick, and/or John and Jane Does 1-24 led directly to the death of Cory Jackson. Vital Core, who employed Robertson, Tucker, Boyd, Risher, Purvis, Pierce, Stigler, and Patrick, and/or John and Jane Does 1-24, is liable for their actions which were undertaken during the course and scope of their employment.

161.    VitalCore is also responsible for the actions and inactions alleged herein against them, Rankin County, the individual Defendants, and John and Jane Does 1-24, which caused the damages suffered by the Plaintiff. Further, such actions and/or inactions by the Defendants, and John and Jane Does 1-24 were committed within the course and scope of their employment with VitalCore.

<u>RATIFICATION</u>

162.    Plaintiff incorporates all allegations set forth in the preceding paragraphs of this Complaint.

163.    Rankin County Sheriff Bryan Bailey is the chief policymaker for the Rankin County Sheriff's Department. He and John and Jane Does 1-24 ignored evidence of widespread disregard of policies and procedures intended to protect pretrial detainees, including Blake Coker, as well as systemic deficiencies in the Rankin County Sheriff's Department that violated the Blake Coker's constitutional rights. Based on information and belief, no officer, supervisor, or other person was retrained on policies intended to protect detainees. Instead, the policymakers approved the jailers' disregard for Blake's serious medical needs and therefore ratified those

actions. As set forth above, it was in fact the goal of the Rankin County Sheriff's Department under Sheriff Bailey to deprive certain individuals of their constitutional rights, and due to his drug addiction Blake Coker was one of those individuals.

164.    Through these acts and omissions of ratification, Rankin County's policymakers – including Rankin County Sheriff Bryan Bailey – were deliberately indifferent to Blake Coker's constitutional rights as set forth herein. Rankin County Sheriff Bryan Bailey ratified his employees' conduct in this matter and is therefore liable for Blake's death.

## PUNITIVE DAMAGES

165.    Plaintiff incorporates all allegations set forth in the preceding paragraphs of this Complaint.

166.    All Defendants acted in complete disregard for Blake Coker's safety by acting in a negligent and/or grossly negligent manner as previously described herein. The actions of these Defendants warrant punitive damages.

167.    The Defendants' actions exhibited gross negligence and direct disregard for the safety of Blake Coker. Punitive damages should be awarded against the Defendants. The Defendants' tortious actions caused the wrongful death of Blake Coker and, therefore, all Plaintiff's emotional distress and mental anguish.

## JURY DEMAND

168.    The Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

169.    WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands:

e.    That judgment be rendered in favor of the Plaintiff and against the Defendant on all causes of action and legally cognizable damages, including economic, non-economic, and

punitive damages, asserted herein in an amount to be determined by a jury under applicable law.

      f.     That Plaintiff be awarded reasonable expenses incurred in this litigation, including attorney's fees and expert fees as well as pre- and post-judgment interest, pursuant to 42 U.S.C. § 1988 and related authority.

      g.     That the Plaintiff receives any other further relief to which he is entitled.

Intentionally left blank

punitive damages, asserted herein in an amount to be determined by a jury under applicable law.

  b.  That Plaintiffs be awarded reasonable expenses incurred in this litigation,

including attorney's fees and expert fees as well as pre- and post-judgment interest, pursuant to

42 U.S.C. § 1988 and related authority.

  c.  That the Plaintiffs receive any other further relief to which he is entitled.

RESPECTFULLY SUBMITTED, this the 17ᵗʰ day of *SEPTEMBER*, 2024.

         ANDREW GARY COKER

Bobby Moak, Ms. Bar No. 9915
LAW OFFICE OF BOBBY MOAK, P.C.
P.O. Box 242
Bogue Chitto, MS 39629
(601) 734-2566
(601) 734-2563 facsimile
bobbymoak402@att.net
Attorney for Petitioner


STATE OF MISSISSIPPI
COUNTY OF HINDS

**PERSONALLY APPEARED BEFORE ME**, the undersigned authority in and for the county and state aforesaid, ANDREW GARY COKER, stated upon his oath that the matters and things contained in the above and foregoing Complaint are true and correct as therein stated.

         ANDREW GARY COKER

SWORN TO AND SUBSCRIBED BEFORE ME, on this the 17ᵗʰ day of September 2024.

NOTARY PUBLIC
(SEAL)

My Commission Expires: August 21, 2028

43